STATE OF VERMONT

ENVIRONMENTAL COURT

|  | } |  |
|---|---|---|
| Appeal of Wesco, Inc. | } | Docket No. 17-1-03 Vtec |
|  | } |  |
|  | } |  |

Decision and Order

Appellant-Applicant Wesco, Inc. appealed from two decisions of the Development Review Board (DRB) of the City of South Burlington, one in January of 2003 and the other in June of 2004, regarding a convenience store with gasoline service at the merged property at 1108-1118 Williston Road. Appellant-Applicant is represented by Marc B. Heath, Esq., and William E. Simendinger, Esq.; the City of South Burlington is represented by Amanda S. E. Lafferty, Esq.

The Court issued a decision and order on motions for summary judgment on June 10, 2005, concluding Docket No. 107-6-04 Vtec and leaving certain issues remaining in Docket No. 17-1-03 Vtec for trial. After resolution of the City's motion to take an interlocutory appeal of that decision, an evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge. A site visit was taken by Judge Wright, alone by agreement of the parties. The parties were given the opportunity to submit written memoranda and requests for findings. Upon consideration of the evidence as illustrated by the site visit, and of the written memoranda and requests for findings filed by the parties, the Court finds and concludes as follows.

Wesco had filed alternate applications to convert an existing service station with diesel and gasoline service, to a convenience store with a diesel pump to the west of the building and either two or three gasoline pumps (each pump having two fueling positions).

1

Wesco obtained conditional use and site plan approval of and constructed the two-gasoline-pump plan, but continues to seek approval of a site plan allowing three gasoline pumps. What remains in the present appeal is Wesco's application for site plan approval of a third gasoline pump (proposed for the same island to the west of the building as the new approved-and-built diesel location), issues of glare and screening relating to a canopy over the diesel island, a larger canopy over that island than the one that had been proposed for the sole diesel location, and changes in the curb cut widths, parking and landscaping configuration on the property.

Appellant-Applicant's property is a 40,440-square-foot (0.93-acre) parcel of property on the northerly side of Williston Road near its intersection with Dorset Street, in the Commercial 1 zoning district and the Traffic Overlay Zone 2 overlay zoning district. The property and project was fully described in the June 24, 2002 decision in Docket Nos. 65-3-00 Vtec and 66-3-00 Vtec and in the June 10, 2005 summary judgment decision in Docket Nos. 17-1-03 Vtec and 107-6-04 Vtec; those descriptions and the appeals' procedural history are repeated here only as necessary to the present decision.

Prior to its conversion to a convenience store with gasoline (and diesel) service, the property contained a building housing a repair garage with gasoline (and diesel) service. The front canopy on this property was approved in 1986 and is not now at issue. The conversion of the property to a convenience store with gasoline (and diesel) service required both conditional use approval and site plan approval.

It is important to understand that conditional use approval and site plan approval are separate decisions made under separate criteria in the City's ordinances. Indeed, these two types of decisions formerly were made by separate municipal bodies: the Zoning Board of Adjustment and the Planning Commission, although both functions are now conducted by the City's Development Review Board.

In 1999 the DRB had granted conditional use approval of an earlier proposal for this

2

property for a convenience store with three gasoline dispensers (each with two fueling positions) and a single diesel dispenser; this Court has ruled in its June 24, 2002 decision on summary judgment in Docket Nos 65-3-00 Vtec and 66-3-00 Vtec that the 1999 conditional use approval of three gasoline dispensers for this property had not been appealed and had become final, although site plan approval of any particular plan for three gasoline dispensers did not become final and remains at issue in the present appeal.

Two appeals were taken to this Court in 2000 regarding two alternative site plans for this property (Docket Nos. 65-3-00 Vtec and 66-3-00 Vtec).  Both site plan applications proposed a single diesel dispenser to remain at the southeast corner of the building and proposed to reduce the existing gasoline station curb cuts to 36 feet in width.  Docket No. 65-3-00 Vtec was the appeal regarding the denial of site plan approval for the site plan proposing three gasoline dispensers on the two existing islands in front of the building.  Docket No. 66-3-00 Vtec was the appeal regarding both the denial of site plan approval and the denial of conditional use approval for the same convenience store with two gasoline dispensers, one on each of the two existing islands in front of the building.  In this Court's June 24, 2002 decision on summary judgment in those two appeals, the Court ruled that, because the 1999 conditional use approval of the three-dispenser proposal had become final and could not be challenged, either directly or indirectly, the conditional use approval of the two-dispenser proposal could be considered and ruled on only to the extent that it differed from the unappealed 1999 three-dispenser conditional use approval.  The Court determined that the two-dispenser plan did not differ from the unappealed 1999 three-dispenser plan as to any of the conditional use approval criteria.  Those criteria included analysis of the lighting plan under the performance standards for direct and indirect glare. However, the 2002 decision ruled that the lighting could be reviewed under the site plan criteria as to the adequacy of landscaping and screening with respect to the illumination of neighboring property.

3

On the merits of both 2000 applications for site plan approval, the Court's 2002 decision approved the lighting plan as to the adequacy of screening and landscaping, and imposed conditions relating to the lighting fixture in the northeastern corner of the property. That decision did not address any question of lighting at or around a canopy to the west of the building, as no such canopy was proposed in either of those proposals. On the merits of both 2000 applications for site plan approval, the Court's 2002 decision also approved both site plans as to the traffic overlay criteria, analyzing the traffic overlay criteria at great length, but denied them as to vehicular and pedestrian access and on-site circulation, specifically without prejudice to submittal to the DRB of changed plans to address the access and circulation problems. No party appealed the Court's 2002 decision, and it became final.

Appellant-Applicant then redesigned its site plans and again filed two alternative applications: one for a three-gasoline dispenser proposal, and one for a two-gasoline dispenser proposal. Both redesigned site plans moved the diesel dispenser to an area to the west of the building, and moved two of the gasoline dispensers to a single central island in front of the building. The redesigned two-dispenser plan proposed to place the diesel dispenser under a 24' x 24' canopy with four 175-watt metal halide lights. The redesigned three-dispenser plan proposed to place the third gasoline dispenser to the west of the building on the same island as the diesel dispenser, under a larger[1] canopy with six metal halide lights.

In January of 2003, the DRB denied the application for site plan approval for the redesigned three-dispenser plan on the basis of traffic issues and the performance

---

[1] The original plan showed a 24' x 32' canopy with six 250-watt bulbs. The approved two-dispenser plan shows a 24' x 24' canopy with four 175-watt metal halide bulbs. At trial Appellant-Applicant presented evidence proposing to increase the size of canopy as originally proposed (24' x 32') but with six 175-watt metal halide bulbs.

4

standards for direct and indirect glare. Docket No. 17-1-03 Vtec is the appeal to this Court of that decision. Eleven months later, in December of 2003, the DRB granted site plan approval for the redesigned two-dispenser plan. No party appealed, and that decision became final.

The redesigned two-dispenser plan had moved the diesel dispenser to an area to the west of the building, and showed on the site plan a 24' x 24' canopy (and its associated lighting) over the diesel dispenser area. This Court determined in the June 10, 2005 summary judgment decision, at page 7, n.3, that the three-dispenser site plan application appealed in Docket No. 17-1-03 Vtec did not become moot as of the subsequent approval of the two-dispenser site plan. That is, nothing in the development of the law regarding vested rights requires an applicant to abandon its application for its preferred alternative if its less-preferred alternative application is approved, or to reapply for its preferred alternative as an amendment to its approved-but-less-preferred alternative under later-amended regulations. Rather, the Court ruled that Appellant-Applicant was entitled to have its site plan application for the three-gasoline-dispenser alternative proposal considered on its merits in this de novo appeal.

In early 2004, Appellant-Applicant submitted an application for a zoning permit to allow construction of the redesigned 2-dispenser plan, without the new canopy over the diesel island shown on the approved site plan. The zoning permit was granted on January 20, 2004, without the canopy, and was not appealed.

After constructing the two-dispenser plan without the diesel canopy, Appellant-Applicant applied in February 2004 for a separate zoning permit for the 24' x 24' diesel canopy. It was denied on the basis that "the use of the proposed second canopy, service station, is neither a permitted nor a conditional use in the C1 zoning district in which the subject property is located," under the Land Development Regulations in effect as of the February 2004 application. The DRB upheld this denial; the appeal of that action was

5

Docket No. 107-6-04 Vtec. In the June 10, 2005 summary judgment decision as to Docket No. 107-6-04 Vtec, the Court ruled that the installation of the 24' x 24' canopy over the existing and approved diesel pump island would not enlarge a non-conforming use, as it does not violate any of the setback or other dimensional requirements for the zoning district and does not create or expand the previously-approved (although now-nonconforming) use on Appellant-Applicant's lot.

Thus, as of the evidentiary hearing in this appeal, the following aspects of site plan approval of the proposed three-dispenser plan remained for decision: placing the third gasoline dispenser at the diesel island to the west of the building; installing a 24' x 32' canopy with six 175-watt metal halide bulbs over that combined diesel/gasoline island to the west of the building; eliminating two small landscaped areas (each planted with a honey locust tree) projecting into each parking area; installing 24 parking spaces rather than the 20 approved and built in the two-dispenser plan; shortening the curbed area bordering the east side of the easterly curb cut to allow more room for circulation near the westerly entrance; increasing the as-built 32-foot width of the two curb cuts to the prior width of 40½ feet for the westerly curb cut and 40 feet for the easterly curb cut (by reducing the length of the curb between the two curb cuts); eliminating the landscaped area between the two curb cuts; and changing the landscaping approved for the westerly end of the property to eliminate the yew hedge west of the westerly curb cut and to alter the configuration of trees to be planted in the westerly area of the property.

In addition, during the hearing, after the City alluded to condition 3 of the approved two-dispenser plan as prohibiting exterior storage and exterior product display, Appellant-Applicant presented testimony regarding the business' need for outside storage of propane tanks, and for outside location of the ice machine or at least of its compressor. The City argued that the proposed site plan did not show either a propane tank storage "cage" or

an ice dispenser freezer located outside the building, while Appellant-Applicant argued that these are two pieces of equipment (rather than fixtures), that they are not commonly depicted on site plans, and that they should not be subject to site plan approval. Appellant-Applicant proposes to locate them both on the westerly side of the building within the view of the convenience store cashier. Condition 3 of the approval of the two-gasoline-dispenser plan prohibited exterior storage and exterior product display. Because Appellant-Applicant did not appeal that condition in the two-gasoline-dispenser approval, it cannot now be challenged. The question of whether the ice dispenser or propane tank cage constitutes "exterior storage" or "exterior product display" is not before the Court for decision in the present case. Any application to interpret "exterior storage" or "exterior product display" as inclusive of or exclusive of those features will have to be made to the Zoning Administrator or appealed to the DRB before it could be considered by the Court.

As constructed pursuant to the two-gasoline-dispenser plan, but without the construction of the diesel canopy, the majority of the traffic using the site as of the time of trial was seeking gasoline rather than diesel fuel. While diesel fuel represents 25 to 30% of the dollar value of fuel sales, as the volume per vehicle is much larger than that for gasoline sales, the number of vehicles is a smaller percentage of the total.

The majority of the traffic using the site enters from the most northerly westbound lane of Williston Road, turning right into the easterly driveway, and exits with a right turn from the westerly driveway, continuing westbound. Large trucks seeking diesel fuel tend to enter through the easterly driveway and circle around the rear of the building to reach the diesel dispenser. A small number of vehicles eastbound in the peak pm hour turn left into the site, using the easterly curb cut; almost all of these either exit westbound from the westerly curb cut, or exit through the Windjammer property to the signalized intersection farther east on Williston Road. Appellant-Applicant proposes that the third gasoline dispenser proposed for the diesel island would be used primarily when the four fueling

7

positions at the two gasoline dispensers in the front of the building are full, or would be used by vehicles entering the site from the Windjammer property or exiting the site to the Windjammer property.

In general, when all the front fueling positions are full, there is room for a vehicle to pass between the most northerly vehicles and the front of the store to reach the diesel island, to pass between the southerly fueling positions and the front landscaping, or to drive around the back of the store to reach the diesel island. Congestion at the front gasoline dispensers does not generally block emergency access to the site, which remains available from the Windjammer entrance at the rear even if the front entrance is temporarily blocked by queued traffic on Williston Road waiting for the Dorset Street lights.

However, if the front curb between the two front curb cuts were shortened, as proposed with the proposed widening of the front curb cuts, it would reduce the space available for queuing at the pumps, and would increase by sixteen linear feet the potential for vehicle conflict, or for vehicle conflict with pedestrians using the sidewalk. While Appellant-Applicant argues that the availability of a third gasoline dispenser at the diesel island would alleviate such queuing, the evidence did not support a finding that the existence of the westerly gasoline dispenser as an alternative would even be apparent to the drivers of vehicles entering the site into the easterly driveway.

Appellant-Applicant proposes to place the third gasoline dispenser on the same island as the diesel dispenser, and relatively close to the diesel dispenser, which is the southerly of the two dispensers proposed for that island. The parties' experts agree that if a third gasoline dispenser is to be placed on the property, the only location on the property that would be feasible for that purpose would be in some location to the west of the building.

However, the proposed configuration does not provide adequate on-site circulation.

8

If large diesel-using vehicles are pulled up to either side of the diesel dispenser, they would completely block access of gasoline-using vehicles to the gasoline dispenser on that side of that island, causing drivers seeking a gasoline dispenser to maneuver around in the other direction to the other side of the island, depending on the location of the vehicles fuel filler pipe, and increasing the possibility of vehicle conflict. Similarly, gasoline-using vehicles pulled up to either side of that gasoline dispenser would block access to the diesel dispenser. While there is some room to queue at that island, large diesel-using vehicles queuing for a place at the diesel island could block the lane providing alternate on-site circulation around the north side of the building. Further, drivers of gasoline-using vehicles who saw that the gasoline dispenser on the diesel island was blocked could attempt to continue in a counterclockwise direction to reach the dispensers in the front of the building, which could create a conflict with the other vehicles queuing for those dispensers at a congested time of day.

In November of 2004, at the time the site was studied in preparation for the evidence given in this matter, the site had only reopened for business, with the diesel island located to the west of the building, for about a month, after the site had been closed for about eight months for renovations. It is possible that the site had not reached its full volume of use by that time. In addition, the site experiences more volume of business and more pedestrian traffic in the warmer months. Nevertheless, in its current configuration the site is adequate to handle the current volume of traffic.

As the third gasoline dispenser cannot be located in the proposed location, for the reasons of on-site circulation discussed above, any decision regarding the proposed larger canopy or its proposed additional two lights would be merely advisory. If in the future Appellant-Applicant were to propose any different configuration of the diesel dispenser and a third gasoline dispenser for the westerly area of the site, any canopy associated with any such new proposal would have to be addressed by the DRB as a new application,

9

before it would come before the Court.

Appellant-Applicant proposes to eliminate two small landscaped areas (each landscaped with grass and a central honey locust tree), one projecting into the easterly parking area, and one projecting into the westerly parking area. Appellant-Applicant proposes instead to install an extra two parking spaces in each of the parking areas. The existing number of parking spaces is sufficient for the current use of the site; Appellant-Applicant would prefer at least an additional two spaces. Appellant-Applicant seeks this change due to the difficulty of mowing the grass in the corners of each of these small landscaped areas and the difficulty experienced by some drivers in maneuvering into and out of the parking spaces adjacent to each of these small landscaped areas without running into the corner curbing of each of these areas.

The westerly small landscaped area adjoins a large area landscaped with grass and trees. The westerly parking area has ample maneuvering room for vehicles. The westerly small landscaped area serves to break up the visual expanse of the westerly parking lot, and should not be eliminated. However, it would improve both the on-site circulation of the site plan and would improve the upkeep of the landscaping to alter the shape of the westerly small landscaped area so that its easterly end forms a circle. This configuration would allow Appellant-Applicant the option either of more easily mowing the area under the tree, or to plant the area under the tree with perennials, and would make it easier for drivers to clear the corners of the westerly small landscaped area to park in the spaces immediately adjacent to it.

On the other hand, the easterly small landscaped area is located adjacent to an existing tall cedar hedge and an additional existing tree. It protrudes into the parking area adjacent to the more heavily-traveled corridor along the side of the building between the easterly curb cut and the exit to the Windjammer. Drivers of vehicles seeking to maneuver into or out of the parking spaces immediately adjacent to the easterly small landscaped

10

area cannot easily make the maneuver without blocking traffic. Eliminating the easterly small landscaped area while retaining the existing tree located southerly of it will improve the on-site circulation and will not appreciably impair the effectiveness of the landscaping. Similarly, shortening the curbed area bordering the east side of the easterly curb cut will create additional maneuvering room in crowded conditions, while retaining the bicycle parking rack or location.

Appellant-Applicant's proposal to increase the as-built 32-foot width of each of the two curb cuts to the prior width of 40½ feet for the westerly curb cut and 40 feet for the easterly curb cut (by reducing the length of the curb between the two curb cuts) and to eliminate the landscaping northerly of the sidewalk between the two curb cuts, cannot be approved, as it would cause problems for both on-site circulation and for the safety of access between the site and Williston Road. The landscaped area northerly of the sidewalk is necessary to separate the pedestrian use of the sidewalk from the vehicular traffic at the pump island, and to discourage drivers from mounting the sidewalk to get around congestion or queuing at the pumps. The 32-foot-wide easterly curb cut is adequate for access, and its geometry encourages drivers to enter and exit at an appropriately low speed. The 32-foot-wide westerly curb cut is also adequate for access, and encourages vehicles to exit one at a time, while a wider curb cut could encourage a right-turning and a left-turning vehicle to exit side-by-side, which would be less safe for the exiting vehicles as well for as the vehicles passing by on Williston Road. Because Williston Road expands to four westbound lanes just west of the westerly curb cut, drivers of vehicles leaving the site who wish to turn left onto Dorset Street must make a wide turn from the site into the third available lane in order to make that turn. This can be accomplished safely when the adjacent roadway is not at its most congested, and is not made necessary due to the narrower width of the curb cut. On the other hand, drivers of vehicles leaving the site who wish to turn into the nearest westbound lane of Williston Road may run over the westerly

11

end of the westerly curb cut, in the area southerly of the sidewalk. The remedy for this would not be to widen the curb cut, as a wider curb cut would not channel the drivers as well. A wider curb cut would encourage such drivers to swing into the easterly half of the curb cut to position themselves to turn into the nearest westbound lane without running over the curb, which would not be safe for any vehicles seeking to enter the curb cut or seeking to leave the fueling positions nearest that lane of the curb cut. Rather, the remedy would be to change the geometry of the westerly end of the westerly curb cut in the area southerly of the sidewalk to give it a wider radius, or to provide it with a mountable curb or paved apron in that area. It appears from the site plan that that area lies beyond the boundary of Appellant-Applicant's property; in any event no proposal for such a remedy is before the Court.

Appellant-Applicants also propose to change the landscaping at the westerly end of the property to eliminate the yew hedge west of the westerly curb cut and to alter the configuration of trees to be planted in the westerly area of the property by substituting a row of four trees for the yew hedge and by augmenting and changing the locations of the trees otherwise approved for planting in the westerly landscaped area. The City argues that the yew hedge is necessary to provide screening of the site from the view of vehicular and pedestrian traffic as it passes by the site. However, the proposal for the entire westerly area of the property will result in an attractive landscape with trees and plantings that will provide an attractive visual transition from the adjacent highway interchange, and when mature will adequately screen the building and westerly canopy.

If the yew hedge were allowed to grow to maturity, it would screen the site with a less-attractive blank wall of hedge. Such a hedge would make the attractive westerly landscaped area less visible to the public, as well as making it less useable by the public and by visitors to the store, if not actually converting it to a dangerous hidden location. Moreover, nothing in the approval for the two-dispenser-plan appears to require the

12

landowner to allow the yew hedge to grow to any particular height. If it is kept pruned to a low height, as Appellant-Applicant intends to do if it is required to remain, it would not provide the desired screening in any event, and would function only to trap blowing debris and paper, making it even more difficult to maintain in an attractive condition. The proposed changes to the landscaping in the westerly landscaped area represent an improvement to the landscaping plan for the site, and are approved.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that site plan approval is DENIED as to placing the third gasoline dispenser at the diesel island to the west of the building and is DENIED as moot as to installing a larger canopy over that island; is DENIED as to increasing the as-built 32-foot width of the two curb cuts to the prior width of 40½ feet for the westerly curb cut and 40 feet for the easterly curb cut (by reducing the length of the curb between the two curb cuts); is DENIED as to eliminating the small landscaped area (with a honey locust tree) projecting into the westerly parking area; is DENIED as to installing two additional parking spaces in place of the westerly small landscaped area; and is DENIED as to eliminating the landscaped area between the two curb cuts.

It is hereby ORDERED and ADJUDGED that site plan approval is GRANTED as to modifying the shape and planting of the small landscaped area (with a honey locust tree) projecting into the westerly parking area; is GRANTED as to shortening the curbed area bordering the east side of the easterly curb cut; is GRANTED as to eliminating the small landscaped area (with a honey locust tree) projecting into the easterly parking area and as to installing the two easterly proposed additional parking spaces in place of that area; is GRANTED as to modifying the shape of the western end of the westerly curb cut; and is GRANTED as to modifying the landscaping at the westerly end of the property to change

13

the yew hedge west of the westerly curb cut to a row of four trees.

On or before September 27, 2006, Appellant-Applicant shall prepare and file a proposed judgment order with the Court, including a full set of revised site plans, incorporating the approvals as stated in this decision and approved as to form by the City, suitable for later filing in the City's zoning and planning files.

Dated at Berlin, Vermont, this 13th day of September, 2006.

_____
Merideth Wright
Environmental Judge